**FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 25 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HARVEST ROCK CHURCH, INC., itself and on behalf of its member churches in California; HARVEST INTERNATIONAL MINISTRY, INC., itself and on behalf of its member churches in California, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of the State of California, <br><br> Defendant-Appellee. | No.  20-56357 <br><br> D.C. No. 2:20-cv-06414-JGB-KK Central District of California, Los Angeles <br><br> ORDER |

Before:  O'SCANNLAIN, RAWLINSON, and CHRISTEN, Circuit Judges.

In light of our court's recent opinion in *South Bay United Pentecostal Church v. Newsom*, No. 20-56358 (9th Cir. Jan. 22, 2021), Appellants' emergency motion for an injunction pending appeal is GRANTED in part and DENIED in part, without prejudice to renewing the request before the merits panel in this case.

The State of California is enjoined from enforcing the following policies against Harvest Rock Church or its member churches pending resolution of the appeal in this case: (1) the fixed 100-person attendance limit on indoor places of worship under Tier 2 of the State's Blueprint for a Safer Economy; and (2) the

fixed 200-person attendance limit on indoor places of worship under Tier 3 of the Blueprint.

This injunction does not prevent the State from enforcing the following policies against Harvest Rock or its member churches pending resolution of the appeal in this case: (1) the total prohibitions against indoor worship under Tier 1 of the Blueprint and the December 3 Regional Stay at Home Order; (2) the limitations on attendance at indoor worship services under Tiers 2, 3, and 4 of the Blueprint that are tied to a percentage of a facility's fire-code capacity; and (3) the State's restrictions on singing and chanting at indoor worship services.

**IT IS SO ORDERED.**

*Harvest Rock Church, Inc. v. Newsom*, No. 20-56357

O'SCANNLAIN, J., specially concurring:

I agree that, in light of our court's recent opinion in *South Bay United Pentecostal Church v. Newsom*, — F.3d —, 2021 WL 222814 (9th Cir. Jan. 22, 2021), we must largely deny Harvest Rock Church's emergency motion for an injunction against the State of California's draconian restrictions on indoor worship services.

I write separately, however, because I believe that the decision in *South Bay* is woefully out of step with both the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam), and our own court's decision in *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228 (9th Cir. 2020). A simple, straightforward application of these controlling cases compels what should be the obvious result here: California's uniquely severe restrictions against religious worship services—including its *total ban* against indoor worship in nearly the entire state—are patently unconstitutional and should be enjoined. The court's refusal to do so in *South Bay* cries out for correction.

I

In an effort to combat the spread of COVID-19, California's "Blueprint for a Safer Economy" and its December 3 Stay at Home Order *completely prohibit* indoor worship services in nearly the whole state. Even in the midst of the present

1

pandemic, these measures are drastic: California is the *only state in the country* that imposes such a ban, according to the brief filed in this case by an organization participating as amicus curiae. *See* Brief of the Becket Fund for Religious Liberty as *Amicus Curiae*, Dkt. No. 29, at 2–4. Yet, in exactly the same locales where indoor worship is prohibited, California still allows a vast array of secular facilities to open indoors, including (to name only a few): retail stores, shopping malls, factories, food-processing plants, warehouses, transportation facilities, childcare centers, colleges, libraries, professional sports facilities, and movie studios.

## II

We should have little trouble concluding that these severe measures violate the Free Exercise Clause of the First Amendment. My view on that question is unchanged from my dissent from our denial of Harvest Rock Church's first emergency motion for an injunction pending appeal in October. *See Harvest Rock Church, Inc. v. Newsom*, 977 F.3d 728, 731 (9th Cir. 2020) (O'Scannlain, J., dissenting), *cert. granted before judgment*, — S. Ct. — , 2020 WL 7061630 (2020), *and vacated on remand*, 981 F.3d 764 (9th Cir. 2020). Since then, two intervening cases have entered injunctions against attendance caps on worship services that were far less extreme than California's total ban. *See Roman Cath. Diocese*, 141 S. Ct. at 63; *Calvary Chapel*, 982 F.3d at 1228. These controlling decisions compel the same conclusion here.

2

## A

First, there can be no doubt that California's discriminatory treatment of houses of worship must be subject to strict scrutiny. *See Roman Cath. Diocese*, 141 S. Ct. at 67; *Calvary Chapel*, 982 F.3d at 1233. Indeed, even the *South Bay* opinion could not avoid that reality. *See South Bay*, 2021 WL 222814, at *8–9.

## B

Second, the controlling decisions also eliminate any notion that California's measures withstand such scrutiny.

It should go without saying that strict scrutiny is an exceedingly difficult standard to satisfy—indeed it is "our most rigorous and exacting standard of constitutional review." *Miller v. Johnson*, 515 U.S. 900, 920 (1995). To sustain its ban on indoor worship, the State must demonstrate that such a measure is narrowly tailored to serve a compelling state interest. *Roman Cath. Diocese*, 141 S. Ct. at 67. That is, the State must show that its "inroad on religious liberty . . . is the *least restrictive means* of achieving" its compelling interest. *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981) (emphasis added).

The State's interest in controlling the spread of a deadly pandemic is unquestionably compelling; no one disputes this. But California has not come close to showing that its measures are narrowly tailored to that interest. As exhaustively recounted in the *South Bay* decision, the State submitted many pages

3

of expert testimony setting forth its understanding of how COVID-19 is spread and why indoor activities present a risk of such spread. But even if we were to accept that testimony as true,[1] it does not support a *total ban* on indoor services as the *least restrictive means* available to mitigate the risk at places of worship.

And how could it be? The *South Bay* decision itself proves the point that there are many ways that the State might safeguard indoor activities that stop well short of a total prohibition. The opinion discusses at great length the variety of less severe measures that California has taken to allow all manner of secular activity to take place safely indoors, including occupancy limitations; facemask, physical-distancing, and disinfection protocols; installation of plexiglass barriers; regular COVID-19 testing practices; and penalties the State might enforce for failures to comply with such requirements. *See generally South Bay*, 2021 WL 222814, at *11–15. The obvious conclusion should be that, because the State has found measures like these sufficient to safeguard indoor activities as varied as running a

---

[1] With respect, I question the salience of much of the evidence recounted in *South Bay*, which, among other things, often presents assertions about issues far beyond the scientific expertise of an infectious disease specialist. For example, the views of an epidemiologist can hardly compel deference on matters of *religion*. Thus, I see no reason for our court to have credited an epidemiologist's assertion that individuals come to places of worship for the specific "purpose of being together," *South Bay*, 2021 WL 222814, at *3 (quoting declaration of Dr. George Rutherford), as opposed to any number of relevant private religious purposes— such as to pray to God within the sacred and spiritually uplifting confines of a church, synagogue, or mosque.

daycare center, shopping in a mall, working in a warehouse or factory, riding public transportation, practicing a professional sport, attending a college class, or filming a movie, then surely *some* combination of similar measures might work for indoor religious worship as well.

Even if it weren't otherwise clear that the State's *total ban* is not the narrowest way by which it might make indoor worship safer, the Supreme Court's decision in *Roman Catholic Diocese* dictates such a conclusion. There, the Court held that New York's 25-person cap on attendance at worship services was a restriction "far more severe than has been shown to be required to prevent the spread of the virus." *Roman Cath. Diocese*, 141 S. Ct. at 67. The Court observed that "there are many other less restrictive rules that could be adopted to minimize the risk to those attending religious services," including, "[a]mong other things," tying "the maximum attendance at a religious service . . . to the size of the church or synagogue." *Id.* Our court subsequently held that even a 50-person cap on attendance at worship services was too inflexible to be narrowly tailored. *Calvary Chapel*, 982 F.3d at 1234.

If fixed attendance caps of 25 or 50 people are too rigid and too extreme to withstand strict scrutiny, how can a *complete ban* not be? To paraphrase the Supreme Court, nothing in the record recounted in *South Bay* supports the conclusion that "admitting [even a single person] to a 1,000-seat church or 400-

5

seat synagogue would create a more serious health risk than the many other activities that the State allows." *Roman Cath. Diocese*, 141 S. Ct. at 67. Although we judges "are not public health experts," *id.* at 68, we cannot simply forfeit all common sense to the State's assertions. We must instead insist upon a "serious examination of the need for [the State's] drastic measure[s]." *Id.* Under any meaningful examination, California's complete ban on indoor worship fails strict scrutiny—just as New York's and Nevada's more permissive regimes did before.

III

The remaining *Winter* factors also favor an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Because the State's restrictions violate the Free Exercise Clause of the First Amendment, there "can be no question" that their continued enforcement would cause irreparable harm to the religious believers and places of worship currently prohibited from worshipping indoors. *Roman Cath. Diocese*, 141 S. Ct. at 67.

An injunction to protect these constitutionally guaranteed rights undoubtedly serves the public interest. Although the State's concern for mitigating a public health crisis is undeniably weighty, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("[T]he

6

injunction serves the interests of the general public by ensuring that the government's . . . procedures comply with the Constitution.").

"[E]ven in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese*, 141 S. Ct. at 68. Thus, as both the Supreme Court and our court have agreed: Even in a case with such vital interests on each side, the balance of harms and the public interest require us to enjoin the State's unconstitutional practices. Indeed, neither court appears to have had much difficulty reaching such a conclusion. *See id.* at 67–68; *Calvary Chapel*, 982 F.3d at 1234.

Until now.

*Harvest Rock Church v. Newsom*, No. 20-56357
Christen, Circuit Judge, concurring

I write separately, and briefly, to clarify a few points.

First, when Harvest Rock filed its emergency motion for injunction pending appeal, two other emergency motions were pending in which houses of worship challenged California's response to the COVID-19 pandemic. One of those cases, *Gish v. Newsom*, No. 20-56324, was consolidated with *South Bay Pentecostal Church v. Newsom*, No. 20-56358, but the issues in Harvest Rock's motion were not aligned with those presented in *South Bay*. In particular, the briefing in *South Bay* addressed California's December 3, 2020 Stay at Home and an order issued December 19, 2020 by Los Angeles County.

The posture of these challenges changed at the January 4, 2021 argument held on Harvest Rock's motion because the parties agreed to supplement their briefs to address the December 3, 2020 Stay at Home Order. Additionally, the order issued by Los Angeles County was withdrawn. At that point, the issues raised by Harvest Rock's motion became aligned with those in *South Bay*, and under our court rules, the *South Bay* panel had priority to issue a merits ruling. *See* General Order 4.1(a). Oral argument was held in *South Bay* on January 15, 2021. To avoid issuing a ruling on Harvest Rock's emergency motion that might have conflicted with *South Bay*'s merits ruling—especially at a time when California's

public health system is under tremendous strain—it was important to allow the

*South Bay* panel time to issue its opinion.

Second, because the *South Bay* panel has priority, the relief ordered here

mirrors the relief granted in *South Bay*.